**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

SAMPSON TALBERT,

        Plaintiff,

vs.

GARDA CL GREAT LAKES, INC.,

        Defendant.

CASE NO. 2:13-CV-10353

HON. ARTHUR J. TARNOW

MAG. JUDGE MONA K. MAJZOUB

GARY C. ANKERS (P41599)
LITTLER MENDELSON PLC
200 Renaissance Center, Suite 3110
Detroit, Michigan  48243
Telephone:     (313) 202-3222
Facsimile:     (313) 447-2060
gankers@littler.com

DAVID L. CHRISTLIEB
(Admission Pending)
CHRISTINA A. ANDRONACHE
(Admission Pending)
AMANDA E. INSKEEP
(Admission Pending)
LITTLER MENDELSON, P.C.
321 N. Clark, Suite 1000
Chicago, Illinois 60622
Telephone:     (312) 372-5520
Facsimile:     (312) 372-7880
dchristlieb@littler.com
candronache@littler.com
ainskeep@littler.com

*Attorneys for Defendant*
*Garda CL Great Lakes, Inc.*

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

    Defendant, Garda CL Great Lakes, Inc. ("Defendant"), by its undersigned counsel, moves the Court for an Order granting its Motion for Summary Judgment, dismissing Plaintiff's

purported collective action Complaint with prejudice, and granting Defendant its costs and attorney fees. Concurrence of opposing counsel in the relief requested was sought on March 8, 2013, however such concurrence was not forthcoming, necessitating the filing of this Motion. Plaintiff's Fair Labor Standard Act overtime claims fail because Plaintiff and the other individuals he purports to represent are exempt from the Fair Labor Standard Act's overtime provisions by virtue of the Motor Carrier Act.  Therefore, summary judgment is proper under Federal Rule of Civil Procedure 56.

In support of this Motion, Defendant relies upon the attached Memorandum in Support, together with accompanying Exhibits and the pleadings on file with the Court.

WHEREFORE Defendant, Garda CL Great Lakes, Inc., respectfully requests that the Court enter an Order granting its Motion for Summary Judgment, dismissing Plaintiff's Complaint with prejudice, and awarding Defendant its costs and attorney fees.

LITTLER MENDELSON PLC

*/s/ Gary C. Ankers*
Gary C. Ankers (P41599)
Detroit, Michigan  48243
Telephone:     (313) 202-3222
Facsimile:     (313) 447-2060
gankers@littler.com

DAVID L. CHRISTLIEB
(Admission Pending)
CHRISTINA A. ANDRONACHE
(Admission Pending)
AMANDA E. INSKEEP
(Admission Pending)
LITTLER MENDELSON, P.C.
321 N. Clark, Suite 1000
Chicago, Illinois 60622
Telephone:     (312) 372-5520
Facsimile:     (312) 372-7880

Dated: March 11, 2013         dchristlieb@littler.com

candronache@littler.com  
ainskeep@littler.com

*Attorneys for Defendant*  
*Garda CL Great Lakes, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing document was served upon all parties and/or attorneys of records to the above cause herein at their respective addresses as disclosed on the pleadings on March 11, 2013, via:

|       |                   |       |                |
|-------|-------------------|-------|----------------|
| _____ | U. S. Mail        | _____ | Facsimile      |
| __X__ | ECF Filing (USDC) | _____ | Hand Delivery  |
| _____ | Email             | _____ | Federal Express |

I declare under penalty of perjury that the statement above is true to the best of my information, knowledge and belief.

                                                      */s/ Gary C. Ankers*

                                                   **GARY C. ANKERS**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

SAMPSON TALBERT,

    Plaintiff,

vs.

GARDA CL GREAT LAKES, INC.,

    Defendant.

CASE NO. 2:13-CV-10353

HON. ARTHUR J. TARNOW

MAG. JUDGE MONA K. MAJZOUB

---

GARY C. ANKERS (P41599)
LITTLER MENDELSON PLC
200 Renaissance Center, Suite 3110
Detroit, Michigan 48243
Telephone:  (313) 202-3222
Facsimile:  (313) 447-2060
gankers@littler.com

DAVID L. CHRISTLIEB
(Admission Pending)
CHRISTINA A. ANDRONACHE
(Admission Pending)
AMANDA E. INSKEEP
(Admission Pending)
LITTLER MENDELSON, P.C.
321 N. Clark, Suite 1000
Chicago, Illinois 60622
Telephone:  (312) 372-5520
Facsimile:  (312) 372-7880
dchristlieb@littler.com
candronache@littler.com
ainskeep@littler.com

*Attorneys for Defendant*
  *Garda CL Great Lakes, Inc.*

---

**DEFENDANT'S MEMORADUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

4

I.     INTRODUCTION

Plaintiff Sampson Talbert is a former driver/messenger for Defendant Garda CL Great Lakes, Inc. ("Garda").  He alleges that, although he worked overtime during his employment with Garda, he was not paid premium overtime wages for the first ten hours of overtime he worked each week.  Thus, he has filed what purports to be a nationwide collective action claim under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA").  To date, ten individuals have filed consents to opt-in to the action: Jonathan Ehnis, Jesse Kozora, Craig Collins, David Holmes, Jr., Derrick Bow, Melvin Flowers, Michael Chastang, Elvin Holmes, and Lynn Nails (hereafter, along with named Plaintiff, collectively referred to as "Plaintiffs").  Plaintiffs claim to be "similarly situated" such that their claims can be decided on a class-wide basis.  (Compl. ¶¶ 13-14, Doc. No. 1).

The driver/messenger duties Plaintiffs performed directly affect the safety of operation of motor vehicles in the transport of property in interstate commerce.  Thus, the FLSA does not apply to Plaintiffs as a matter of law.  Instead, the Motor Carrier Act ("MCA") applies and Defendant is entitled to summary judgment as a matter of law.

II.    STATEMENT OF FACTS

    A.     **The Jaramillo Decision**

Almost exactly one year before Plaintiffs filed the instant action, drivers/messengers of Garda's Broadview, Illinois branch filed a lawsuit alleging the same claims in the U.S. District Court for the Northern District of Illinois.  *Jaramillo v. Garda, Inc.*, Case No. 12-c-662.  The *Jaramillo* plaintiffs, purporting to represent a state-wide class of Garda's drivers/messengers, also claimed that Garda had violated the Fair Labor Standards Act and Illinois law by failing to provide overtime premiums.  Upon Garda's motion for summary judgment, the court dismissed plaintiffs' action, finding that Garda's drivers/messengers were subject to the jurisdiction of the

5

Secretary of Transportation, and thus were exempt from the FLSA overtime requirement under 29 U.S.C. § 213(b)(1), the "motor carrier exemption." *Jaramillo*, 2012 U.S. Dist. LEXIS 149468 (N.D. Ill. Oct. 17, 2012).[1] The present, copy-cat claim brings the same allegations, this time on a purported nation-wide basis,[2] and should be dismissed, with prejudice, for the same reasons.

B. **Garda's Operations**

Garda is a secured transportation service company, engaged in the business of providing armored vehicle transportation, protection and security of its customers' coin, currency, and checks. (Declaration of Mel Zackery ("Zackery Decl.") attached as Exhibit 1, ¶ 4). Garda is a "contract carrier" and holds U.S. Department of Transportation ("DOT") Federal Motor Carrier Safety Administration ("FMCSA") number 163997. (*See* Exhibit 2).

Plaintiff was employed at the Livonia, Michigan branch, located at 12886 Westmore Street, Livonia, Michigan ("Livonia Branch"). (Compl. ¶ 5; Zackery Decl. ¶ 31). Garda's business at the Livonia Branch includes transporting coin, currency, and checks to and from customers throughout Michigan. (Zackery Decl. ¶ 4). The Livonia Branch also provides services across state lines. (*Id.*). Garda's Livonia Branch customers include national and regional banks, the U.S. Federal Reserve Bank in Detroit, credit unions, and various other retail establishments. (*Id.* ¶ 5). Garda's drivers participate in daily runs between the Federal Reserve Bank in Detroit and the Toledo, Ohio branch and transport currency between the Federal Reserve Bank in Detroit and bank customers in Ohio. (*Id.* ¶ 15).

---

[1] Unpublished opinions are attached hereto as Exhibit 4.
[2] While Plaintiff claims to seek to represent a nation-wide class of drivers/messengers, it is important to point out that any and all *Jaramillo* plaintiffs would be foreclosed from joining this suit by virtue of collateral estoppel. These claims have already been decided by the District Court in the Northern District of Illinois, and they may not attack that final judgment by joining this copy-cat lawsuit.

6

During the relevant time period, Garda's Livonia Branch utilized a fleet of approximately 50 armored vehicles. (*Id*. ¶ 6). In the fleet, only 5 vehicles have a gross vehicle weight rating ("GVWR")[3] of less than 10,001 pounds. (*Id*.) The remaining vehicles have a GVWR of more than 10,001 pounds. (*Id*.).

Garda's Livonia Branch organizes each armored vehicle route according to a computer program it uses to maximize efficiency. (*Id*. ¶ 16). The various customer locations along an armored vehicle route are plotted into a daily guide sheet that each armored crew uses to make pick-ups and deliveries. (*Id*. ¶ 17). The daily routes are subject to change depending on customer needs on each specific day. (*Id*.).

Once the routes are mapped each day, a vehicle and crew is assigned to each route, depending on daily business needs. (*Id*. ¶ 19). The crew assigned to each route is generally comprised of a driver and a messenger. (*Id*. ¶ 9). The primary function of the driver is to operate the armored vehicle, driving it along the pre-mapped route: from the Garda Livonia branch to each customer serviced by the route, and then back to the branch. (*Id*. ¶ 10). The driver must observe all security and safety procedures and performs miscellaneous duties, such as assisting the messenger with loading, as required. (*Id*.). Messengers, on the other hand, are in charge of the organization and paperwork related to route, as well as physically loading and unloading the currency, coin, negotiable instruments and other valuables on and off the truck. (*Id*. ¶ 11). For example, if a messenger is assigned to an ATM-only route, her or his responsibilities include withdrawing cash and checks from, and replenishing cash to, ATMs. (*Id*. ¶ 13). With the assistance of drivers, messengers load and unload the armored vehicles before they depart the daily delivery assignments and after the returns. (*Id*. ¶ 12). Loading and

---

[3] GVWR refers to the maximum potential gross weight of a loaded vehicle, not to the actual weight of a vehicle at any given time.

7

unloading the armored vehicles must be performed in accordance with the safety standards set forth in the Federal Motor Carrier Safety Regulations ("FMCSR"). (*Id*.). Additionally, the messenger must be prepared to drive the vehicle should the driver become incapacitated. (*Id.* ¶ 13). There is no separate position of "messenger"; rather, drivers rotate into messenger or driver roles, depending on the route. (*Id.* ¶ 9).

On occasion, Garda will also assign a guard to the crew. (*Id.* ¶ 14). The guard is a person who is assigned to the crew for the specific purpose of protecting company personnel, property and shipments for which the company and/or crew is responsible. (*Id*.). Guards are assigned to routes more frequently during the holiday season when the trucks are carrying more liability and when the crime rate increases. (*Id*.). Like the messenger, the guard must be prepared to drive the vehicle if the driver becomes incapacitated. (*Id*.). Any driver could be assigned to any route on any given day, and they often are reassigned because of schedule changes caused by employee call-ins, FMCSR maximum hours restrictions, and customer needs. (*Id.* ¶ 20).

      C.      **Garda's Compliance With the FMCSA**

Because Garda is a FMCSA-certified "contract carrier," its armored vehicle employees must comply with FMCSA's detailed rules, regulations, and procedures. (*Id.* ¶ 21). Prior to the commencement of their employment, Plaintiffs were required, in connection with the application process, to supply information in their Applications for Employment demonstrating their ability to satisfy the DOT's requirements for drivers. (*Id.* ¶ 22); 49 C.F.R. § 390 *et seq*. Moreover, each took a written driver's examination and road test, passed a medical examination, and underwent drug tests, as required under the FMCSR. (*Id.* ¶ 23). As a result, Plaintiffs received authorization, under the FMCSR, to drive Garda's motor vehicles. (*Id*.).

At the commencement of their employment, Garda's drivers, messengers, and guards

receive specific training on the duties and responsibilities of armored vehicle crew members. (*Id.* ¶ 24). For example, the drivers/messengers participate in a rigorous training course and receive instruction regarding Garda's policies and procedure, safe driving of commercial vehicles, and the FMCSR. (*Id.* ¶ 26). During this two-day orientation, Plaintiffs received a copy of the Federal Motor Carrier Safety Regulations Pocketbook ("FMCSR Pocketbook"). (*Id.*).

During their employment, Plaintiffs must comply with the FMCSR. For example, drivers must supply their driving records every year and undergo medical examinations every two years. (*Id.* ¶ 27). Each day, prior to the start of their routes, each driver is responsible for conducting a vehicle safety check and inspection in accordance with the FMCSR. (*Id.* ¶ 28). Similarly, drivers must operate the vehicle according to the safety standards set forth by the FMCSR and messengers must load and unload armored vehicles in accordance with the safety standards set forth by the FMCSR. (*Id.* ¶ 29). Furthermore, the number of hours drivers may work in any given week is restricted by the maximum hours requirements set forth in the FMCSR. (*Id*. ¶ 28).

   **D.**  **Drivers Work for Garda Transporting Products in Interstate Commerce**

As armored drivers/messengers, Plaintiffs were responsible for the transport and physical pickup and delivery of money and valuables, protecting money and valuables during transit and delivery, and recording package and delivery information. (*Id.* ¶ 30).

   **E.**  **Plaintiff and Opt-Ins Primarily Drove Large Trucks and Defendant's Fleet Is Overwhelmingly Comprised of Vehicles With a 10,001 Pounds or More GVWR**

Defendant has undertaken an in-depth analysis of the data for plaintiff and opt-ins which demonstrate, conclusively, that Plaintiff and opt-ins primarily drove large trucks and defendants' fleet is overwhelmingly comprised of vehicles with a 10,001 pounds or more GVWR. (See Affidavit of Gary Nuzzi, ¶ 10, Ex. B, attached as Exhibit 3).

The data show as follows:

9

| Plaintiff / Opt-In | Percentage of Driving Heavy Trucks | Number of Days Driving Heavy Trucks | Number of Days Driving |
|---|---|---|---|
| Bow, Derrick | 90.1% | 273 | 303 |
| Chastang, Michael | 95.9% | 471 | 491 |
| Collins, Craig | 100.0% | 93 | 93 |
| Ehnis, Jonathan | 95.9% | 140 | 146 |
| Flowers, Jr., Melvin | 98.9% | 456 | 461 |
| Holmes, Elvin | 99.5% | 390 | 392 |
| Holmes, Jr. David | 99.6% | 500 | 502 |
| Kozora, Jesse | 99.6% | 282 | 283 |
| Nails, Lynn | 100.0% | 78 | 78 |
| Talbert, Sampson | 98.1% | 158 | 161 |

In summary, there are 10 Plaintiffs (named and opt-in Plaintiffs) in this case. All of those Plaintiffs drove heavy trucks at least 90.1% of their working days since February 2011 and the vast majority drove heavy trucks at least 95.9%.

A driver/messenger's route, vehicle, and crew member function could be changed on any given day, though Plaintiff predominantly drove heavy trucks. (Zackery Decl. ¶¶ 9, 20). For example, during the relevant period, Plaintiff Talbert drove and served as a messenger on a wide variety of vehicles, including but not limited, to Vehicle Nos. 262, 552, 3594, 4772, 4776, 5996, 6000, 6002, and 6264. (Nuzzi Aff. ¶ 7). The vast majority of the vehicles driven by Plaintiff Talbert have a rating above 10,001 GVWR. (*Id.*). In fact, Plaintiff Talbert drove vehicles with a rating about 10,001 GVWR 98.1% of the time. (*Id.* ¶ 10). Similarly, during the relevant period, opt-in Plaintiff Craig Collins drove and served as a messenger on a myriad of vehicles, including

but not limited to Vehicle Nos. 4226, 4464, 4596, 4774, 4776, 5522, and 5876, all of which have a rating above 10,001 GVWR.  (*Id*. ¶ 8).  In fact, Plaintiff Collins drove vehicles with a rating about 10,001 GVWR 100% of the time. (*Id*. ¶ 10).   During the relevant period, opt-in Plaintiff Elvin Holmes drove and served as a messenger on a multitude of vehicles, including but not limited to Vehicle Nos. 262, 3146, 4138, 4660, 4768, 4770, 6000, and 6002.  (*Id*. ¶ 9).  Plaintiff Elvin Holmes drove vehicles with a rating about 10,001 GVWR 99.5% of the time.  (*Id*. ¶ 10).

### III.   ARGUMENT

#### A.   Summary Judgment Standard

Summary judgment is proper when there is no dispute as to any material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. Pro. 56(a).  When deciding a motion for summary judgment, the Court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Gecewicz v. Henry Ford Macomb Hosp. Corp.,* 760 F. Supp. 2d 732, 736 (E.D. Mich. 2010) (Lawson, J.) (internal citations omitted).

To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986).  Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.  The party opposing the summary judgment may not merely rely on the hope that the court will believe the nonmovant's denial of a disputed fact, "but must make an affirmative showing with proper evidence in order to defeat the motion." *Gecewicz,* 760 F. Supp. 2d at 373 (*citing Street v. J.C. Bradford & Co*., 886 F.2d 1472, 1479 (6th Cir. 1989)).

**B.     As the District Court for the Northern District of Illinois Recently Held, Garda's Driver/Messengers Are Exempt From The Overtime Provisions Of The FLSA Under The Motor Carrier Exemption**

Section 213(b)(1) of the FLSA, known as the federal motor carrier exemption, excludes from the overtime requirement "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant" to the MCA. 29 U.S.C. § 213(b)(1).  Under the MCA, the Secretary of Transportation has the power to establish qualifications and maximum hours of service for employees who: (1) are employed by carriers whose transportation of passengers or property by motor vehicle is subject to the Secretary of Transportation's jurisdiction; and (2) engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce, within the meaning of the MCA.  29 C.F.R. §782.2(a); *Vaughn v. Watkins Motor Lines, Inc.*, 291 F.3d 900, 904 (6th Cir. 2002); *Collins v. Heritage Wine Cellars, Ltd*, 589 F.3d 895, 898 (7th Cir. 2009).

In this case, there can be no question that Garda is subject to the Secretary's jurisdiction under the Motor Carrier Act.  Garda is a registered contract carrier with the Department of Transportation.  (Zackery Decl. ¶ 21).  Thus, jurisdiction has already been exercised.  *See, e.g., Baez v. Wells Fargo Armored Service Corp.*, 938 F.2d 180, 182 (11th Cir. 1991) ("[T]he permit issued by the [Interstate Commerce Commission] indicates that jurisdiction has already been exercised.").  Furthermore, to demonstrate their ability to satisfy the DOT's requirements for drivers, Plaintiffs were required to complete applications relating to their qualifications drive, to submit to medical examinations and controlled substances testing prior to and during employment, and to inspect the armored vehicles at the beginning of each day.  (Zackery Decl. ¶¶ 22-29).

1. **Garda and Plaintiffs Transport Customer Property In Interstate and Foreign Commerce**

It is undisputed that Garda is engaged in interstate commerce. The term "interstate commerce" is defined as "commerce between any place in a State and any place in another State, whether such commerce moves wholly by motor vehicle or partly by rail, express, or water." *See*, 42 Fed. Reg. 60078, 60079. Courts have held that Garda's services, such as transporting currency, coin, checks, and other valuables between banks, the Federal Reserve Bank, bank processing centers, check cashing facilities and other locations, involve the transportation of property in interstate commerce as defined by the MCA. *See, e.g., Jaramillo*, 2012 U.S. Dist. LEXIS 149468; *Baez*, 938 F.2d 180 (armored car company transporting cash, checks, and coin found to be engaging in interstate commerce); *Hernandez v. Brink's, Inc.*, Case No. 08-20717-CIV-MOORE/SIMONTON, 2009 U.S. Dist. LEXIS 2726, at *7 (S.D. Fla. Jan. 15, 2009) (armored car company transporting out of state checks engaged in interstate commerce).

The *Brink's* decision is instructive, as it is factually and analytically identical to the instant case. Like Garda, Brink's is a secured transportation service company that provides armored vehicle transportation of customers' coin, currency, negotiable instruments and other valuables. *Id*. at *1. The court held that

> Brink's is a motor carrier that transports checks destined for banks outside of Florida and transports property destined for interstate and foreign locations. ***It is unnecessary for an employee to engage in interstate travel as long as the property being transported is bound for an intestate destination***. . . [T]he nature of Brink's relevant activities fall squarely within the meaning of interstate commerce for purposes of the Motor Carrier Act.

*Brink's*, 2009 U.S. Dist. LEXIS 2726, at * 7-8 (emphasis added).

The courts have made it clear that the *intrastate* transportation of property qualifies as transportation within *interstate* commerce when the intrastate transportation is part of an

interstate journey. *Collins*, 589 F.3d at 898 (finding that drivers who transported wine from an in-state warehouse to in-state retail locations were involved interstate commerce); *see also Horn v. Digital Cable & Communs., Inc.*, 2008 U.S. Dist. LEXIS 111869 (N.D. Ohio June 11, 2008); *Craft v. Ray's, LLC*, 1:08-cv-627-RLY-JMS, 2009 U.S. Dist. LEXIS 90862 (S.D. Ind. Sept. 9, 2009) (finding drivers who transported recyclables from their original location to a storage area in-state were involved in interstate commerce where the employer intended to transport half of the recyclables out of state each month).

The Department of Labor ("DOL") has similarly opined that drivers and driver helpers on armored vehicles are covered by the MCA exemption if they transport property destined for another state. U.S. DOL Opinion Letter, 1988 DOLWH LEXIS 42 (Dec. 21, 1988); 1997 DOLWH LEXIS 19 (March 12, 1997). Specifically, in noting that courts frequently find drivers of armored vehicles to be under the Secretary of Transportation's jurisdiction, the DOL stated:

> In construing the extent of the Section 13(b)(1) exemption, the courts have ruled that ***employees do not have to cross a state line to be subject to the exemption if they are transporting property destined for another state***. Such property may consist of checks drawn on out-of-state banks transported by employees of an armored car company who do not drive across a state line.

1997 DOLWH LEXIS 19 (emphasis added).

Even those of Garda's drivers who do not travel out of state transport currency and checks within Michigan that are ultimately bound out of state. (Zackery Decl. ¶¶ 4-5, 15). Moreover, Garda's driver/messengers regularly transport property across state lines. (*Id*. ¶¶ 4-5, 15). Therefore, Garda was engaged in the transportation of property in interstate commerce under the MCA. *Cartage Co. v. Reynolds*, 166 F. 2d 317, 322 (6th Cir. 1948) (despite named plaintiff having driven exclusively intrastate for 39 weeks, employer was subject to Secretary's jurisdiction and employer was not liable for unpaid FLSA overtime) (*citing Morris v. McComb,*

*Adm'r*, 332 U.S. 422 (1947)).

The federal regulations implementing the FLSA specifically provide:

> Highway transportation by motor vehicle from one State to another, in the course of which the vehicles cross the State line, clearly constitutes interstate commerce under both [the FLSA and the MCA]. . . . The result is no different where the vehicles do not actually cross State lines but operate solely within a single State, if what is being transported is actually moving in interstate commerce within the meaning of both acts; the fact that other carriers transport it out of or into the State is not material.

29 C.F.R. § 782.7 (b)(1) (citations omitted).

The federal regulations also cite to *Morris v. McComb* to further support the contention that drivers can fall under the jurisdiction of the SOT even when they do not travel outside the state on every trip and even when the majority of the employer's trips do not involve interstate freight.

> [In *Morris v. McComb*] approximately 4 percent of the total trips made by drivers employed by a common carrier by motor vehicle involved in the hauling of interstate freight. Since it appeared that employer, as a common carrier, was obligated to take such business, and that any driver might be called upon at any time to perform such work, which was indiscriminately distributed among the drivers, the Court considered that such trips were a natural, integral, and apparently inseparable part of the common carrier service performed by the employer and driver employees.

29 C.F.R. § 782.2 (c)(1) (*citing Morris v. McComb*, 332 U.S. 422 (1947).

### 2. Driver/Messengers' Job-Related Duties Directly Affect the Safety of Operation of Motor Vehicles

Garda's drivers/messengers are engaged in activities that directly affected the operational safety of the armored vehicles. The Secretary of Transportation has specifically determined that employees who (1) drive the motor vehicle; (2) ride on armored trucks in capacities other than

that of driver, and (3) load and unload vehicles are responsible for, and affect the safety of, motor vehicles. 29 C.F.R. §§ 782.2(b)(1), 782.3 ("Drivers"), 782.4 ("Drivers Helpers"), 782.5 ("Loaders"). Accordingly, the regulations prescribed under the MCA to address safety operation clearly apply to the positions held by Plaintiffs. *See, e.g.*, *Jaramillo*, 2012 U.S. Dist. LEXIS 149468 (MCA exemption applies to Garda's drivers/messengers); *Baez*, 938 F.2d 180 (MCA exemption applies to driver-guards and messenger-guards); *Brink's*, 2009 U.S. Dist. LEXIS 2726, *10 ("Plaintiffs who worked as Drivers [and Messengers] fall within the regulation's definition of drivers who affect the safety of operation and are therefore covered by the FLSA's motor carrier exemption.").

### 3. All of Garda's Driver/Messengers Fall Under the Secretary's Jurisdiction

As of June 2008, FLSA overtime requirements generally apply to motor carrier employees whose employment duties involve the safety of motor vehicles weighing 10,000 pounds or less. SAFETEA-LU Technical Corrections Act of 2008, Pub. L. 110-244, §306(a) and (c); Note to 29 U.S.C. § 207. However, Garda's driver/messengers are exempted from the FLSA's overtime requirement even if they do not affect the safety of operation of vehicles with a GVRW exceeding 10,001 pounds because Garda operates a "mixed-fleet" of vehicles. The term "mixed fleet" refers to motor carriers who use both vehicles with GVRW of over and under 10,001 GVRW. *Brink's*, 2009 U.S. Dist. LEXIS 2726, at *13. When employees drive vehicles in the mixed-fleet, the MCA, and not the FLSA, applies to those drivers at all times, regardless of whether they occasionally drive vehicles below the 10,001 GVRW. *Jaramillo*, 2012 U.S. Dist. LEXIS 149468, *14-15; *Dalton v. Sabo, Inc.*, Civ. No. 09-358-AA, 2010 U.S. Dist. Lexis 32472, *10-11 (D. Or. April 1, 2010).

As the *Jaramillo* court found in October 2012, Garda's drivers/messengers are subject to

16

the Secretary of Transportation's jurisdiction even though Garda operates a mixed fleet and some drivers do not always operate heavy trucks. *Jaramillo*, 2012 U.S. Dist. LEXIS 149468. In that case, the plaintiffs conceded that they were engaged in interstate commerce, but challenged the exemption on the basis that some individuals did not drive vehicles with a GVWR over 10,001 every week and so those individuals did not fall under the SOT's jurisdiction during those weeks. *Id*. at *4. The Northern District of Illinois rejected that argument and refused to read a requirement into the FLSA or the MCA that Garda's drivers/messengers' status as falling under the jurisdiction of the DOL or SOT would flip flop on a week by week basis. *Id*. at *9. The District of Oregon likewise rejected the same argument in *Dalton*, finding "even if each of these plaintiffs occasionally performed duties on vehicles weighing 10,000 or less, when mixed activities occur, the Motor Carrier Act favors coverage of the employee during their course of employment." 2010 U.S. Dist. Lexis 32472, at *10-11.

This result fits with the long-standing judicial view that DOT and DOL jurisdiction are mutually exclusive. As the Seventh Circuit held in *Collins*,

> Dividing jurisdiction over the same drivers, with the result that their employer would be regulated under the Motor Carrier Act when they were driving the big trucks and under the Fair Labor Standards Act when they were driving trucks that might weigh only a pound less, would require burdensome record-keeping, create confusion, and give rise to mistakes and disputes.

589 F. 3d at 901; *see also Albanil v. Coast 2 Coast, Inc.*, CIVIL ACTION H-08-486, *11, 2010 U.S. Dist. Lexis 32666 (S.D. Tex. 2010) (noting that "the DOL's and the DOT's jurisdiction are mutually exclusive"); *Tidd v. Adecco USA, Inc.*, 2008 U.S. Dist. Lexis 69825 (D. Mass. 2008) (finding DOL or DOT jurisdiction applies on an "either-or" basis); *Elliot v. Daver Ernstes & Sons Trucking*, No. 1:05-cv-1891-JDT-WTL, 2006 U.S. Dist. LEXIS 72278, *21-23 (S.D. Ind.

Oct. 3, 2006) (the DOT "made it clear that in its interpretation that jurisdiction exists 'where the driver could reasonably have been expected to make one of the carrier's interstate runs'") (*citing* 46 Fed. Reg. 37902); *Garcia v. Fleetwood Limousine, Inc.*, No. 6:05-cv-67-ORL-HRS, 2007 U.S. Dist. LEXIS 82034, *12-14 (M.D. Fla. Nov. 5, 2007) (the jurisdiction of the DOT applies to individuals who "could reasonably have been expected to" engage in covered activity); *Badgett v. Ren-Way*, 350 F. Supp. 2d 642, 654 (W.D. Pa. 2004)("In determining whether an employee's job responsibilities have a substantial impact on interstate commercial highway safety, it is the *nature* of the employee's regular job duties that is most important, not necessarily the *percentage* of the employee's involvement in duties affecting highway safety in interstate commerce.") (emphasis in original).

Applying the analysis here, the MCA's exemption applies as Garda's driver/messengers clearly fall within the Secretary of Transportation's jurisdiction. Thus, the FLSA does not apply and Plaintiffs are exempt from its overtime compensation requirements.

### IV.   CONCLUSION

For the foregoing reasons Plaintiffs' claims for overtime are without merit and Defendants are entitled to judgment as a matter of law. Defendants therefore respectfully request this Court to grant their motion for summary judgment and dismiss Plaintiffs' complaint with prejudice.

          LITTLER MENDELSON PLC

          */s/ Gary C. Ankers*
          Gary C. Ankers (P41599)
          Detroit, Michigan 48243
          Telephone: (313) 202-3222
          Facsimile: (313) 447-2060
          gankers@littler.com

          DAVID L. CHRISTLIEB
          (Admission Pending)
          CHRISTINA A. ANDRONACHE
          (Admission Pending)
          AMANDA E. INSKEEP
          (Admission Pending)
          LITTLER MENDELSON, P.C.
          321 N. Clark, Suite 1000
          Chicago, Illinois 60622
          Telephone: (312) 372-5520
          Facsimile: (312) 372-7880
          dchristlieb@littler.com
          candronache@littler.com
          ainskeep@littler.com

Dated: March 11, 2013        ***Attorneys for Defendant Garda CL Great Lakes, Inc.***

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served upon all parties and/or attorneys of records to the above cause herein at their respective addresses as disclosed on the pleadings on March 11, 2013, via:

| | | | |
|---|---|---|---|
| ____ | U. S. Mail | ____ | Facsimile |
| X | ECF Filing (USDC) | ____ | Hand Delivery |
| ____ | Email | ____ | Federal Express |

I declare under penalty of perjury that the statement above is true to the best of my information, knowledge and belief.

          */s/ Gary C. Ankers*
          Gary C. Ankers

Firmwide:118863349.1 067762.1172